IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| Michael Dante' Hughes and Angela Ann Hughes, | ) Civil Action No.: 4:13-cv-00646-RBH |
| Plaintiffs, | ) |
| | ) **ORDER** |
| v. | ) |
| BMW of North America, LLC, | ) |
| Defendant. | ) |

This matter is before the Court on Defendant BMW of North America, LLC's motion for summary judgment as to all claims asserted by Plaintiffs in their complaint. Mot. for Summ. J., ECF No. 25. Plaintiffs filed a timely response to the motion. ECF No. 28. A hearing was held on August 19, 2014.[1] After having carefully considered all matters presented to the Court, the Court finds that the undisputed and material evidence compels the Court to grant summary judgment in favor of Defendant on the basis that Plaintiffs' claims are barred by the applicable statutes of limitation.

**FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

On or about January 12, 2004, Plaintiffs purchased a 2004 BMW 545i from Hendrick BMW, an authorized dealership of Defendant's vehicles located in Charlotte, North Carolina.

---

[1] Counsel for Plaintiffs did not appear at the August 19 hearing on the motion. Two days later, Plaintiffs' counsel contacted the Court to explain that he never saw the notice of the hearing, which was sent via the Court's electronic filing system. ECF No. 36. He told the Court that he never found the notification after searching all of his computers and devices, which would have received email for the email address listed with the Court. Counsel for Plaintiffs requested the opportunity to submit a proposed order, and the Court granted his request. The Court found that an additional hearing would be unnecessary in light of the fact that Plaintiffs had submitted a response brief, as well as a proposed order. *Cf.* Local Civil Rule 7.08 (D.S.C.) ("[M]otions may be determined without a hearing.").

When Plaintiffs purchased the vehicle in 2004, Defendant issued a four-year, 50,000-mile express written warranty to cover manufacturing defects in the vehicle. Plaintiffs allege that they began experiencing "catastrophic" problems with the vehicle's electrical and computer systems within months of its purchase. Plaintiffs took the vehicle to Hendrick BMW in Charlotte numerous times for inspection and repairs related to the problems giving rise to this action. Plaintiffs claim that, despite numerous attempts to repair the vehicle, Defendant failed to correct the alleged manufacturing defects during the warranty period.

At the time Plaintiffs purchased the vehicle, they were residents of North Carolina. In February 2010, however, Plaintiffs moved from Waxhaw, North Carolina, to Myrtle Beach, South Carolina. After nearly a decade of problems with their vehicle, they filed this action with this Court on March 11, 2013.[2] In their complaint, Plaintiffs allege breaches of both express and implied warranties, violations of the Magnuson-Moss Warranty Act, and a breach of the implied covenant of good faith and fair dealing. They seek to revoke acceptance of the vehicle and recover the purchase price. They also seek "consequential damages consisting of sales tax, license, registration and other fees, finance charge, towing expenses, rental expense, time and inconvenience, loss of business opportunity and all costs and expenses, including attorney fees," as well as punitive damages. Defendant filed a motion for summary judgment, arguing that all of Plaintiffs' claims are barred by the applicable North Carolina statutes of limitations. Moreover, Defendant contends that Plaintiffs fail to show a genuine dispute of fact that any warranties were breached. Plaintiffs, on the other hand, argue that South Carolina law is applicable and that the applicable statutes of limitations are not in play. They assert they have met their burden to withstand summary judgment.

---

[2] Plaintiffs cited their South Carolina residency as the basis for venue, and Defendant does not challenge this Court's ability to hear the action on the basis that it lacks jurisdiction or is the improper venue.

## SUMMARY JUDGMENT STANDARD

The Court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of demonstrating that summary judgment is appropriate; if the movant carries its burden, then the burden shifts to the non-movant to set forth specific facts showing that there is a genuine dispute for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). If a movant asserts that a fact cannot be disputed, it must support that assertion either by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials;" or by "showing . . . that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

To prevail on a motion for summary judgment, the movant must demonstrate that (1) there is no genuine dispute as to any material fact and (2) that he is entitled to judgment as a matter of law. As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect disposition of the case under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id*. at 257. In determining whether a genuine dispute has been raised, a court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). The existence of a mere scintilla of evidence in support of the non-movant's position is insufficient to withstand a summary judgment motion. *Id*. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary

judgment motion. *Ross v. Commc'n Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248.

## DISCUSSION

### I. Plaintiff's Claims for Breach of Express and Implied Warranties

#### a. Application of North Carolina Law

The parties do not dispute that Plaintiffs' warranty claims are governed by state law, specifically Article 2 of the Uniform Commercial Code ("U.C.C."). They disagree, rather, about which state's U.C.C. and statute of limitations are applicable. Defendant argues that North Carolina's statute of limitations should apply; Plaintiffs contend that South Carolina's statute of limitations controls. For the following reasons, the Court finds that the statute of limitations provided in North Carolina's U.C.C. is applicable to Plaintiffs' warranty claims.

Because Plaintiffs have filed this action in South Carolina, the Court must look to South Carolina's law governing conflicts of law. *CACI Int'l, Inc. v. St. Paul Fire & Marine Ins. Co.*, 566 F.3d 150, 154 (4th Cir. 2009) ("Because we have diversity jurisdiction in this case, we apply the choice of law rules of the forum state."). South Carolina's U.C.C. provides that when there is no agreement specifying the choice of law, then South Carolina law applies "to transactions bearing an appropriate relation to this State." S.C. Code Ann. § 36-1-105(1). The Fourth Circuit has adopted the "most significant relationship" test to determine whether a transaction has an appropriate relationship to South Carolina. *In re Merrit Dredging Co., Inc.*, 839 F.2d at 207; *Thornton v. Cessna*, 886 F.2d 85, 89-90 (4th Cir. 1989). Under this approach, courts must apply the law of the state that has the most significant relationship to the transaction, taking into consideration such

factors as the needs of the interstate system, the relevant policy of the forum, the relevant policies of other interested states and the relative interests of those states in the determination of the issue, the expectations of the parties, basic policies underlying the particular field of law, and certainty, predictability, and uniformity of result. *In re Merritt*, 839 F.2d at 207 (citing *Restatement (Second) of Conflict of Laws* §§ 6, 244).  The Restatement further directs courts to consider such factors as the place of contracting, the place of negotiation, the place of performance, the location of the subject matter of the contract, and the domicile, residence, and place of business of the parties. *Restatement (Second) of Conflict of Laws* § 188(2) [hereinafter *Restatement*].

Applying these factors, this Court finds that North Carolina has the most significant relationship to the transaction in this case.  Generally, "the state whose interests are most deeply affected should have its local law applied." *Restatement* § 6 comment f.  To that end, when appraising the relative interests of the states involved in the dispute, the Court may compare the relationships of the states to the parties, the conveyance, and the chattel conveyed. *In re Merritt*, 839 F.2d at 207.  Here, it is plain that North Carolina is the state whose interests are most deeply affected in this case.  First, Plaintiffs purchased the vehicle in North Carolina and acquired the protections of the warranty in North Carolina.  Plaintiff Angela Hughes testified that they custom-ordered the vehicle at the end of 2003, prior to the model being released, and they took delivery in January of 2004.  All the ordering and negotiating was done with Hendrick BMW in Charlotte.  Further, Plaintiffs resided in North Carolina at the time of purchase and afterwards up until 2010.  Plaintiffs stored and maintained the vehicle in North Carolina for at least six years following the purchase. Additionally, Hendrick BMW in North Carolina performed all of the maintenance on the vehicle, including every oil change, and Plaintiffs continue to take the vehicle to Hendrick BMW

for maintenance despite their relocation to South Carolina. Indeed, Hendrick BMW was the only repair shop that performed inspections and repairs on the vehicle during the warranty period.[3]

Moreover, the relevant policies of both South Carolina and North Carolina call for the application of North Carolina law. In considering its own relevant policies, as well as the relevant policies of the other interested states, the forum should seek to reach a result that will achieve the best possible accommodation of these policies. *Restatement* § 6 comment f. Here, South Carolina has little interest in the case apart from the fact that it is the place of the trial of the action and the place of Plaintiffs' current residence. Thus, the only relevant policies of the state of the forum are embodied in its rules relating to trial administration. *See Restatement* § 6 comment e. Consequently, applying North Carolina's relevant substantive laws and this Court's rules relating to trial administration to the case at hand is the best possible accommodation of the policies of the interested states. In addition, the needs of the interstate system, the basic policies underlying the particular field of law, and the need for certainty, predictability, and uniformity of result all call for the application of North Carolina law. As the Fourth Circuit has recognized, "[t]he policy of encouraging commercial intercourse through the application of laws which are uniform across jurisdictions is fundamental to the field of commercial law." *In re Merritt*, 839 F.2d at 207 (citing U.C.C. § 1-102(2)(c)).

Finally, the Court must also consider the justified expectations of the parties. Despite the delivery of the car in South Carolina, every other significant event that occurred within the

---

[3] Although Plaintiffs accepted delivery of the vehicle in South Carolina, the fact that the parties intended it to leave the state immediately after delivery lessens South Carolina's interest. "[W]hen it is understood that the chattel will be kept only temporarily in the state where it was located at the time of the conveyance . . . it is more likely that . . . some other state will have the most significant relationship to the parties, the chattel and the conveyance and be the state of the applicable law." *Restatement* § 244 comment f. It follows that North Carolina has the most significant relationship to the parties, conveyance, and chattel in this case. *See Thornton v. Cessna Aircraft Co.*, 886 F.2d 85, 89–90 (4th Cir. 1989).

6

applicable warranty period took place in North Carolina, including the alleged breaches and attempted repairs. Although Plaintiffs now reside in South Carolina, they did not leave North Carolina until more than six years after the purchase, and they were not justified in relying on South Carolina law to excuse their failure to take the necessary steps to protect their interests. Considering North Carolina's substantial contacts with the parties, conveyance, and vehicle at issue, it was entirely foreseeable that the substantive law of North Carolina would apply to Plaintiffs' claims. In combination, the Restatement factors compel the conclusion that North Carolina bears the most significant relationship the transaction in this case, and the transaction therefore does not have an "appropriate relation" to South Carolina under § 36-1-105. As a result, this Court finds that the law of North Carolina governs Plaintiffs' claims arising from the sale of the vehicle.

### b. *Application of the Statute of Limitations*

Under North Carolina's U.C.C., breach of warranty actions must be commenced within four years after the cause of action has accrued. N.C.G.S.A. § 25-2-725(1). The statute specifically states that the "cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach," and that the breach occurs when the goods are delivered. N.C.G.S.A. § 25-2-725(2). As the plain language of the statute makes clear, the limitations period begins to run at the time of delivery and lack of knowledge of a defect is immaterial. *See Bobbitt v. Tannewitz*, 538 F. Supp. 654, 656–57 (M.D.N.C. 1982).

There is no dispute that Plaintiffs accepted delivery of the subject vehicle in January 2004. Accordingly, Plaintiffs' cause of action against BMW began to accrue in January 2004. Under § 25-2-725, Plaintiffs had until January of 2008, to file any breach of warranty claims arising out of the transaction. However, they did not commence this action until March 11, 2013, more than five years after the limitations period had expired and more than nine years after taking delivery of the

7

vehicle. Unquestionably, Plaintiffs' breach of warranty claims are barred by the four-year limitation set forth in § 25-2-725.

In their complaint, Plaintiffs also claim they are entitled to remedies under the Magnuson-Moss Warranty Act ("the Act"), 15 U.S.C. §§ 2301 to 2312. These claims are likewise barred by the applicable limitations period. Although the Act contains no statute of limitations, "[t]he courts continue to hold consistently that . . . [the Act] incorporates the four year statute for warranties found in U.C.C. § 2-725." Barkley Clark & Christopher Smith, *The Law of Product Warranties* § 14:12 (citing relevant cases). For example, in *Murungi v. Mercedes Benz Credit Corp.*, the district court explained that when Congress does not specify a limitations period for an action created by legislation, "it is well settled that courts must 'borrow' a limitations period from the local limitation most analogous to the case at hand." 192 F. Supp. 2d 71, 78 (W.D.N.Y. 2001) (citing *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson*, 501 U.S. 350, 355 (1991)). The court further noted that the scope of consumer protection under the Act is "no greater than previously recognized under state law." *Id.* at 79 (quoting *Walsh v. Ford Motor, Co.*, 588 F. Supp. 1513, 1525 (D.D.C. 1984). The *Murungi* case similarly involved causes of action for breach of warranty under New York law and the Act arising out of the purchase of a vehicle. *Id.* at 73. The court found that New York's enactment of the U.C.C.'s four-year limitations period was the closest analogous state limitations period. *Id.* at 79. It further recognized that other courts across the nation have applied the same limitations period to claims under the Act. *Id.* (citing several cases addressing this very issue). Here, the most appropriate limitations period from which to borrow for Plaintiffs' claim under the Act claim is the four-year limitation in North Carolina's U.C.C. § 2-725. As previously discussed, that statute specifically provides that the limitations period begins to run on tender of delivery,

"regardless of the aggrieved party's lack of knowledge of the breach." N.C.G.S.A. § 25-2-725(2). Plaintiffs are unquestionably beyond this limitation.[4]

### II.     Plaintiffs' Claim for Breach of the Implied Covenant of Good Faith and Fair Dealing

In addition to their warranty claims, Plaintiffs also assert a claim for breach of the implied covenant of good faith and fair dealing. They cite "agreements" entered into "[i]n the course of purchasing and obtaining service" for their vehicle. Specifically, they claim the breaches resulted from Defendant intentionally selling Plaintiffs a defective vehicle, by "abusing its discretion in performance of the . . . service related contracts," and "by denying the existence of the documented defects and problems with Plaintiffs' vehicle and making efforts to avoid service, repair, and replacement obligations." In their response to Defendant's motion, Plaintiffs do not specifically address the claim. To the extent, however, that the Plaintiffs object to the application of North Carolina law to this ambiguous claim, the Court must address the claim and determine which state's law applies to it. Defendant lumps the claim in with Plaintiffs' warranty claims, where the Court is guided by Article 2 of North Carolina's U.C.C.[5] But Plaintiffs' claim appears to arise from alleged *service* contracts that were performed during the warranty period that lasted until January 2008.

---

[4] To the extent that Plaintiffs seek a remedy under the Act for Defendants' failure to "attempt resolution through arbitration," the Court notes that a failure to arbitrate does not give rise to a cause of action under the Act. It is, rather, a defense if a warrantor has established procedures for informal dispute settlement as a condition to commencing a civil action and a consumer fails to comply. *See* 15 U.S.C. § 2310(a). Defendant has not raised the issue as a defense or presented evidence that Plaintiffs were required to seek an informal resolution of their claims prior to filing them with this Court.

[5] Certainly, if Plaintiffs claim arises from the *sales* contract, a similar analysis and result as discussed above would be in order. That is to say, North Carolina's U.C.C. would require application of the four-year statute of limitations accruing in January 2004. Like the warranty claims, such claims arising from the sales contract would surely be barred.

9

This distinction, however, is only significant as to the statute of limitations the Court must apply to the claim because North Carolina law must govern this claim as well. In determining which state's substantive law to applies, a South Carolina court must apply the law of the state where the contract is made and performed. *See Doctors Hosp. of Augusta, L.L.C. v. CompTrust AGC Workers' Compensation Trust Fund*, 636 S.E.2d 862, 864 (S.C. 2006); *Livingston v. Atlantic Coast Line R. Co.*, 180 S.E. 343, 345 (S.C. 1935). As highlighted above, the contract for the sale of the vehicle was unquestionably formed in North Carolina. Furthermore, as Plaintiffs note in their affidavits, their vehicle had "been, almost exclusively, serviced and repair[ed] . . . by the Hendrick BMW located in Charlotte, North Carolina." There is no genuine dispute, therefore, that the alleged service contracts at issue in this case were both formed and performed by the parties in North Carolina.[6] The law of North Carolina, therefore, is applicable to Plaintiffs' claim alleging breach of the implied covenant of good faith and fair dealing.

In North Carolina, a claim alleging a breach of the implied covenant of good faith and fair dealing is subject to a three-year limitations period. N.C.G.S.A. § 1-52(1) (providing that an action "[u]pon a contract, or liability arising out of a contract, express or implied, must be commenced within three years"). Defendant argues that the statute of limitations should begin to run when Plaintiffs first began to recognize the problems with their vehicle in the middle of 2004. Plaintiffs make no argument specific to the claim at all, noting only that the applicable statute of limitations "simply do[es] not come into play." Because Plaintiffs filed this action against Defendant over nine

---

[6] The evidence submitted indicates that the only services performed outside of North Carolina were routine services performed at Myrtle Beach BMW and at Ken Baker Originals in Myrtle Beach, South Carolina. At one point, Ken Baker Originals attempted to repair the problem giving rise to this action. It is undisputed, however, that the vehicle was forwarded to Hendrick BMW in Charlotte to perform the relevant repairs when Ken Baker Originals was unable to do so. Therefore, none of the services performed in South Carolina can plausibly support Plaintiffs' claim. Tellingly, Ken Baker Originals is not a party to this action.

10

years after they purchased their vehicle, it cannot merely be stated that the statute of limitations does not apply; the statute is very much a factor. The evidence is undisputed that Plaintiffs were aware that the warranty period expired in January 2008. Plaintiffs, moreover, attest that the problems with their vehicle were chronic (they "returned again and again and again" to seek repairs). Despite the problems with their vehicle, they waited over five years (from January 2008 to March 2013) to allege their claim that Defendant made efforts "to avoid service, repair, and replacement obligations." Plaintiffs cannot emphasize the severity of the defect and, at the same time, plausibly imply they were unaware of any potential claim against Defendant until March 2013. Accordingly, the Court finds that the undisputed evidence supports Defendant's contention that Plaintiffs' claim of breach of the implied covenant of good faith and fair dealing is barred by North Carolina's statute of limitations.[7]

## CONCLUSION

For the foregoing reasons, **IT IS THEREFORE ORDERED** that Defendant BMW of North America, LLC's motion for summary judgment (ECF No. 25) is **GRANTED** and that Plaintiffs' complaint is **DISMISSED** *with prejudice*.

---

[7] The Court finds alternatively that Plaintiffs' claim for breach of the implied covenant of good faith and fair dealing fails on the merits. The only evidence of any probative value submitted by Plaintiffs is that Defendant failed to remedy the defect during the warranty period and that Defendant never reported the defect and repairs to CARFAX (there is, of course, no evidence Defendant was required to do so). Indeed, "[i]n every contract there is an implied covenant of good faith and fair dealing that neither party will do anything which injures the right of the other to receive the benefits of the agreement." *Bicycle Transit Authority, Inc. v. Bell*, 333 S.E.2d 299, 305 (N.C. 1985) (internal quotation marks omitted). In light of this paltry evidence, the Court finds no reasonable jury could find, by a preponderance of the evidence, that Defendant prevented Plaintiffs from receiving the benefits of any agreement. *Liberty Lobby*, 477 U.S. at 257.

**IT IS SO ORDERED.**

                                             s/ R. Bryan Harwell
                                             R. Bryan Harwell
                                             United States District Judge

September 24, 2014
Florence, South Carolina